UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRIDGET S.,

                        Plaintiff,

v.                                                                              CASE # 21-cv-00878

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                               OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC       JUSTIN D. JONES, ESQ.
  Counsel for Plaintiff                                      KENNETH R. HILLER, ESQ.
600 North Bailey Ave
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                     HEATHER SERTIAL, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **GRANTED**, defendant's motion is **DENIED,** the decision of the

Commissioner is **REVERSED**, and this matter is **REMANDED** for further administrative proceedings consistent with this order.

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

Plaintiff was born on September 12, 1975 and is a college graduate. (Tr. 271, 276). Generally, plaintiff's alleged disability consists of seizures, traumatic brain injury, bipolar disorder, anxiety, contusion of the left temporal lobe, cognitive decline, fatigue, neuropathy, and tremors. (Tr. 275). Her alleged onset date of disability is May 1, 2018 and her date last insured is December 31, 2020. (Tr. 271).

    B.     **Procedural History**

On April 8, 2019, plaintiff protectively applied for Disability Insurance benefits under Title II of the Social Security Act and Supplemental Security Income benefits under Title XVI. (Tr. 12). Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On November 3, 2020, plaintiff appeared before ALJ Paul Georger. (Tr. 28-54). On December 29, 2020, ALJ Georger issued an unfavorable decision finding plaintiff not disabled under the Social Security Act. (Tr. 9-27). On June 10, 2021, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

    C.     **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since May 1, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: seizure disorder, major depressive disorder, bipolar disorder, generalized anxiety disorder, and cognitive decline. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds, The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can never work at unprotected heights, never moving mechanical parts, and never operating a motor vehicle. The claimant is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work. The claimant is able to perform simple work-related decisions. The claimant can have occasional interaction with supervisors, coworkers and the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 12, 1975 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act from May 1, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 9-27).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff argues the ALJ improperly considered opinion evidence and crafted a RFC that was not supported by substantial evidence. (Dkt. No. 8 [Plaintiff's Mem. Of Law]).

### B. Defendant's Arguments

In response, defendant broadly argues the RFC is supported by substantial evidence and the ALJ appropriately considered the opinion evidence. (Dkt. No. 10 [Defendant's Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity'

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

IV.   **ANALYSIS**

Plaintiff argues the ALJ erred in his assessment of the medical opinions from her treating neurologist Dr. Kolb. Plaintiff asserts the ALJ failed to properly consider the findings and opinions of Dr. Kolb and that the error was harmful because Dr. Kolb's records and opinions supported additional mental limitations which the ALJ failed to include in the RFC. Specifically, plaintiff argues the ALJ failed to properly articulate the supportability and consistency factors in his discussion. For the reasons outline below, remand is necessary for a proper evaluation of the medical opinion evidence in the record.

Under 20 C.F.R. § 416.920c the ALJ must articulate how he or she considered certain factors in assessing medical opinions. *See* 20 C.F.R. § 416.920c(a)-(c). The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors. *Id*. § 416.920c(c). An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion but need not expound on the remaining three. *Id.* § 416.920c(b). The ALJ is tasked with analyzing medical opinions at the source-level, meaning that the ALJ need not discuss each and every medical opinion in the record, and may apply the factors holistically to a single medical source. *Id.* § 416.920c(b)(1). These rules do not apply to the ALJ's analysis or consideration of nonmedical sources. *Id.* § 416.920c(d).

6

Plaintiff established care under Dr. Channa Kolb at UBMD on December 19, 2017 with a neurology evaluation. (Tr. 1161-166). While initially taking her out of work on September 12, 2018, Dr. Kolb opined plaintiff could return to work "if she feels she is capable of completing light duty and is not lifting patients on her own." (Tr. 850). Dr. Kolb stated that plaintiff was unable to drive, operate heavy machinery, or swim alone. (*Id*.). On February 20, 2020, Dr. Kolb opined plaintiff should "apply for disability as I feel she is not safe to engage in work at this time." (Tr.1552). Dr. Kolb noted her starring spells and restricted her from driving. (*Id.*). Dr. Kolb provided a medical opinion for the Erie County Department of Social Services (DSS), on October 12, 2020, asserting plaintiff was very limited sitting, hearing, and speaking; understanding and remembering instructions; carrying out instructions; and maintain attention and concentration. (Tr. 1531). Dr. Kolb opined moderate limitations making simple decisions, interacting appropriately with others; maintaining socially appropriate behavior without exhibiting behavioral extremes; maintaining standards of personal hygiene and grooming; functioning in a work setting at a consistent pace. (*Id*.). Dr. Kolb noted plaintiff's treatment with Dr. Benedict at UBMD, which included a memory evaluation. (*Id*., Tr. 1020).

On November 2, 2020, Dr. Kolb provided another medical opinion form with plaintiff's diagnoses of generalized convulsive seizures, multiple concussions, traumatic injury of the head, and cognitive decline. (Tr. 1570). Dr. Kolb opined that "when walking or looking down [plaintiff] becomes dizzy and nauseated" and felt "the room is spinning." (*Id.*). Dr. Kolb opined:

> Plaintiff was unable to maintain regular attendance and be punctual within customary strict tolerances; unable to accept instructions and respond appropriately from criticism from supervisors; precluded from sustaining an ordinary routine without special supervision for over 20 percent of the workday; and unable to make simple work-related decisions or ask simple questions or request assistance. Plaintiff was also precluded for 11 to 20 percent of the workday with carrying out short simple instructions; interacting appropriately with the general public; being aware of normal hazards and taking precautions; and setting realistic goals or making plans independently of others. Plaintiff

7

would be off task five percent of the time if employed and miss more than four workdays per month. (Tr. 1570-74).

Dr. Kolb added that, due to cognitive decline plaintiff is unable to complete small tasks and due to seizures, her body/brain shuts down and requires breaks every half hour. (Tr. 1574). Dr. Kolb concluded that plaintiff had extreme limitations in understanding, remembering, or applying information; and in concentrating, persisting, or maintaining pace. (Tr. 1575).

Although the ALJ took portions of Dr. Kolb's findings into consideration, the ALJ failed to articulate how he assessed the doctor's overall opinions and ignored findings that were inconsistent with the RFC. In his decision, the ALJ found the opinions from Dr. Kolb to only be partially persuasive, vaguely concluding that the "opinions regarding serious and extreme limitations are not consistent with the totality of the evidence, including correlating clinical findings which reflect grossly normal mental status findings[.]" (Tr. 24). The regulations make clear when considering a medical opinion, the ALJ must explain his approach with respect to the supportability and consistency of the opinion. 20 C.F.R. § 416.920c(b). The articulation requirements should allow a reviewer to trace the path of the ALJ's reasoning. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01; *see also* Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) ("Although the ALJ did not describe in detail her rationale, we can infer from the decision that she attributed 'great weight' to the opinion because she found it most consistent with the record as a whole."). A review of ALJ Georger's decision does not allow the Court to trace the path of his reasoning.

Broadly stating that Dr. Kolb's opinion was not consistent with the totality of the evidence is not enough to satisfy the regulations. (*See* Tr. 24). The Second Circuit has found ALJs must provide more than "conclusory one sentence explanation[s]" addressing opinion evidence. *Morgan v. Colvin*, 592 F. App'x 49, 50 (2d Cir. 2015) (remanding where ALJ provide

one sentence conclusory explanation to reject a treating physician opinion); *see Pamela P. v. Saul*, No. 3:19 CV 575 (DJS), 2020 WL 2561106, at *6 (N.D.N.Y. May 20, 2020) (remanding for the "conclusory nature of the ALJ's reasoning" in determining persuasiveness of opinions).

The ALJ's prior notation of neurology records showing plaintiff was alert, oriented in all spheres, with intact cranial nerves, normal speech and normal coordination unfortunately omitted examination findings of significant limitations. Dr. Kolb's examination findings also included abnormal findings with recent memory impairment, decrease in concentration ability, dysmetria, abnormal gait (cautious, slow with slight ataxia and slowing), severe monoparesis, mild ataxia, and moderately decreased mentation in mental functioning. Tr. 452, 531, 163-64, 827-28, 849-50, 854-55, 860-62, 999 1000, 1549-51). *Donald S. v. Comm'r of Soc. Sec.*, No. 20-CV-01292-MJR, 2022 WL 1302131, at *4 (W.D.N.Y. May 2, 2022) (remanding for reliance on "cherry-picked" evidence evaluating persuasiveness of opinion). All of Dr. Kolb's examinations included these abnormal findings, showing plaintiff was limited physically and mentally, but the ALJ failed to address this in his evaluation of the opinions. Furthermore, Dr. Kolb specifically offered supporting explanations on the opinion forms, which the ALJ did not address. For instance, in the opinion, Dr. Kolb explained that "Due to seizures [plaintiff's] body/brain shuts down and require[s] breaks every half hour. [Plaintiff] becomes very fizzy, overwhelmed and confused very easily." (Tr. 1574). Although the ALJ noted portions of Dr. Kolb's opinion, he failed to consider all the supporting documentation and narrative provided. This omission is especially egregious in a case with a complex medical condition involving a seizure disorder, multiple concussions and cognitive decline.

Similarly, when evaluating the consistency of Dr. Kolb's opinions with the evidence of record as a whole, the ALJ's cursory conclusion that the opinion was not consistent with the

totality of the evidence was insufficient. As noted, the ALJ only referenced evidence in the decision which was consistent with the ultimate RFC and did not address the plethora of evidence which supported Dr. Kolb's opinions. For example, plaintiff was hospitalized twice for seizures in February 2018. (Tr. 361, 517). At a February 2019 examination with a new counselor plaintiff presented with slurred and occasional excessive speech, and tangential thoughts. (Tr. 798). In May 2019, plaintiff attended a memory evaluation with Dr. Benedict, which revealed deficits in word fluency, delayed recall, cognition index, attention, and letter comparison. (Tr. 1020-21). There were also deficits in motor functioning with a grooved pegboard and Dr. Benedict concluded that the "degree of deficit [was] severe enough to compromise ADLs and render her work disabled." (Tr. 1022). Plaintiff also received a concussion evaluation from Dr. Leddy in August 2019, showing mildly unsteady tandem gait and recommended cognitive rehabilitation and intense psychiatric treatment." (Tr. 1006-7). Next, in September 2020, Plaintiff began receiving at home physical therapy with the Visiting Nurses Association (VNA) due to past head injuries, weakness, dizziness, and balance deficits. (Tr. 1452). Assessment showed she had difficulty transferring, ambulation difficulties and was unable to leave her home without assistance. (Tr. 1473). Overall, the ALJ ignored evidence in the record that was consistent with Dr. Kolb's opinion. In sum, the ALJ's consideration of the medical opinions was not sufficient and remand is required.

**ACCORDINGLY, it is**

      **ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **<u>GRANTED</u>**; and it is further

   **ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

   **ORDERED** that this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: June 16, 2023             <u>*J. Gregory Wehrman*</u>

Rochester, New York            HON. J. Gregory Wehrman
                      United States Magistrate Judge